# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A.Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 464 - 1,5,6,8 | **DATE** | 7/14/2004 |
| **CASE TITLE** | USA vs. R. CARMEN, RODRIGUEZ, STATES, AVILA | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: Defendants Richard Carman, Omar Avila, Alberto Rodriguez and Charles States' motions for severance [112, 136, 178, 248] are denied. Carman and Avila's motions to dismiss on duplicity grounds [179, 251] are also denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 16 2004 | 331 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CG | courtroom deputy's initials | | mailing deputy initials | |

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
|     Plaintiff, | ) | 02 CR 464-1, 5, 6, 8 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| RICHARD CARMAN, ALBERTO | ) | |
| RODRIGUEZ, CHARLES STATES, | ) | |
| and OMAR AVILA, | ) | **DOCKETED** |
| | ) | |
|     Defendants. | ) | JUL 1 6 2004 |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendants Richard Carman, Alberto Rodriguez,

Charles States, and Omar Avila's motions for severance as well as Carman and Avila's motions

to dismiss on duplicity grounds. For the reasons set forth below, these motions are denied.

### Background

This case involves a sixty-six page, twenty-nine count superseding indictment

(hereinafter the "indictment") charging eleven defendants with crimes arising out of an eight-year

racketeering and drug conspiracy. Count 1 charges eight defendants, namely Richard Carman

(hereinafter "Carman"), Jerome Carman (hereinafter "J. Carman"), Cesar Casiano, Natividad

Calderon, Alberto Rodriguez, Charles States, Daniel Perez, and Omar Avila with engaging in a

pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt

Organizations Act ("RICO") from 1994 through August 2001. 18 U.S.C. § 1962(c). The

indictment lists seventeen acts of racketeering, including a drug conspiracy, eleven kidnapings

33)

(one of which ended in murder), one robbery, one theft, and three instances of possession with intent to distribute various quantities of marijuana, crack and cocaine. Each racketeering act is specific as to when it occurred and who was involved and many are broken down into a number of interrelated crimes. Count 2 charges the same eight defendants with RICO conspiracy under 18 U.S.C. § 1962(d) and alleges that each defendant agreed to commit at least two acts of racketeering. Count 3 charges the same eight defendants, plus Reynaldo Christopher and Charles Brown, with participating in an overlapping drug conspiracy in violation of 21 U.S.C. § 846.

Counts 4 through 24 charge various subsets of defendants with crimes such as murder, extortion, possession of a firearm, witness tampering, hostage taking, and possession and distribution of drugs, all of which stem from the racketeering acts set forth in Count 1. In particular, Counts 4 and 5 charge Richard Carman, Omar Avila and Daniel Perez with the murder of Sindulfo Miranda. Counts 25 through 28 charge Charles States with crimes incident to his arrest, including forcibly assaulting and resisting law enforcement officers, attempted murder, and two counts related to possession of a firearm.[1] Finally, Count 29 charges Francisco Ortiz for attempted possession of marijuana, which occurred in connection with the kidnaping and murder of Miranda.[2]

---

[1] On May 7, 2002, arrest warrants were issued for Carman, J. Carman, Casiano, Calderon, Rodriguez and States. Four arrests were made within a day, but States and J. Carman remained fugitives. On October 9, 2002, based on a tip from an informant, law enforcement officers arrested States in an apartment building on the south side of Chicago. During the arrest, States exchanged fire with the officers, striking one in the hand. J. Carmen was arrested a couple of months later.

[2] Ortiz is the only defendant who is not charged in the conspiracy counts. He is, however, charged with committing a crime during the course and in furtherance of the alleged conspiracies.

Defendants Ortiz, Casiano and Calderon have pleaded guilty, and Perez is expected to do so. This leaves the seven defendants for trial, including Carman, J. Carman, Rodriguez, States, Avila, Christopher and Brown. Defendants Carman, Rodriguez, States and Avila have moved for severance. Many of the arguments revolve around the gruesome murder charges.[3] For instance, Carman and Avila move for separate trials alleging that each has given a statement inculpating the other in the murder. The other two movants, Rodriguez and States, did not come on the scene until roughly four years after the murder. They also seek separate trials, claiming they will be unfairly prejudiced once the jury hears evidence of the murder. In light of these arguments, it is not necessary to detail every alleged drug deal and kidnaping, but a few facts regarding the objectives of the enterprise and the alleged murder will be helpful.

The RICO enterprise and conspiracy was allegedly organized and headed by Richard Carman.[4] The primary goal was dealing drugs. Defendants allegedly obtained drugs primarily by planning and carrying out a series of violent kidnapings, robberies and extortions of drug dealers and suspected drug dealers. Defendants would steal money and other valuables from their victims and split the proceeds.

The first kidnaping took place in July 1997. Carman, Avila, Perez and Ortiz allegedly

---

[3] At the time these motions were filed, Carman, Avila and Perez were facing a potential death sentence for the murder. The government has since announced that it will not seek the death penalty. As a result, Carman and Avila withdrew all arguments which related to capital punishment issues.

[4] Carman, J. Carman, Avila, Casiano, Calderon, Rodriguez, Perez, Ortiz and Christopher allegedly are members of the Latin Kings street gang, while Avila and States are members of another gang. Carman allegedly was put in control of a subsection of Latin Kings in 1994 and used his position in the gang to recruit for and maintain discipline over the enterprise.

3

kidnaped Sindulfo Miranda, a suspected drug dealer, with the intention of stealing about 1,000 kilograms of marijuana. Miranda was put in the back of a rental van driven by Ortiz and was severely beaten en route to an apartment on the north side of Chicago. Over the next twenty-four hours, Carman interrogated Miranda as to the whereabouts of the marijuana. Apparently not satisfied with his answers, Carman and Avila allegedly continued to beat, burn and otherwise brutally torture Miranda until he died.

Ten other kidnapings took place between October 1997 and August 2001. According to the government, Carman planned and participated in every kidnaping. J. Carman is named as a participant in nine kidnapings, Perez in eight, States in four, Rodriguez and Casiano in three, Calderon in two, and Avila, Christopher and Brown in one.[5] Each kidnaping fit within the alleged scheme in that defendants allegedly carried firearms and threatened, beat or tortured their victims to obtain drugs and money or information in pursuit of the same. Additional facts are incorporated as necessary to address defendants' arguments with respect to joinder and severance.

## Discussion

**A.      Motion to Adopt Is Denied.**

As an initial matter, Avila's blanket request to adopt Carman's motion for severance is denied in accordance with the Court's previous rulings.

**B.      Joinder Is Proper as to All Defendants and All Counts.**

---

[5] Ortiz was allegedly involved in the Miranda kidnaping, but he is not formally charged with anything but attempted possession of marijuana.

### 1. Avila Is Properly Joined under Rule 8(b).

Avila claims he is entitled to a separate trial because joinder is improper. He argues: "Mr. Carman's discussion of the significant disconnects –disparate configurations of defendants, disparate events separated not only temporally, but in terms of their nature, character or flavor– is sufficient to demonstrate that the non-capital defendants and non-capital charges are improperly joined with the capital defendants and capital murder charges under Rule 8(b)." (Avila Mot. at 4.) Avila cites no relevant authority and makes no attempt to explain precisely how Carman's argument entitles him to a separate trial under FED. R. CRIM. P. 8(b).[6] While the Court is tempted to outright reject Avila's argument based on this bald assertion, it briefly considers whether he is a proper defendant under Rule 8(b).

Proper joinder is determined solely by the allegations in the indictment. *United States v. Bruun*, 809 F.2d 397, 406 (7th Cir. 1987). Rule 8(b) provides that all defendants who participated in the "same series of acts or transactions" may be charged in a single indictment. FED. R. CRIM. P. 8(b). The usual meaning of the phrase "same series of acts or transactions" includes acts pursuant to a common scheme or plan. *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003); *United States v. Moya-Gomez*, 860 F.2d 706, 766 (7th Cir. 1988) (citations omitted). It is well settled that when an indictment properly alleges a conspiracy, joinder is proper with respect to all participants. *United States v. Garner*, 837 F.2d 1404, 1412 (7th Cir. 1987); *United States v. Bailin*, No. 89 CR 668, 1990 WL 114741, at *1 (N.D. Ill. July 17, 1990).

---

[6] The Court gave Avila an opportunity to clarify his position with respect to misjoinder but finds that Avila's supplemental motion also fails to articulate a clear argument.

The indictment charges Avila with participating in the RICO and drug conspiracies which were ongoing from 1994 through August 2001. Both conspiracies revolve around the same alleged scheme, namely, dealing in drugs which largely were obtained by kidnaping and robbing drug dealers and suspected drug dealers. For his part, Avila allegedly participated in the kidnaping, torture and murder of Miranda, a suspected drug dealer. Several months later, Avila conspired to kidnap another individual, who was in fact a drug dealer. Nonetheless, Avila argues he is misjoined because the alleged racketeering acts (a) were spread out over nearly eight years, (b) were committed by varying combinations of defendants, and (c) differed in character, nature and flavor. None of these arguments renders joinder improper.

The phrase "same series of acts or transactions" contemplates acts which are connected not so much by time as by their logical relationship. *United States v. Carlisi*, No. 92 CR 1064, 1993 WL 339079, at *15 (N.D. Ill. Aug. 30, 1993) (citing *United States v. Cavale*, 688 F.2d 1098, 1106 (7th Cir. 1982)); *see also Lanas*, 324 F.3d at 899 (rejecting misjoinder argument and finding single unified scheme over defendant's claim that temporal connections between offenses were slim); *United States v. Marcy*, 777 F. Supp. 1393, 1396 (N.D. Ill. 1991) (stating mere temporal breadth is insufficient to warrant a finding of misjoinder). Contrary to Avila's argument, the Court finds the pattern of crimes set forth in the indictment are undoubtedly of similar nature, character and flavor. Defendants allegedly planned, carried out and split the proceeds from eleven violent kidnapings over the course of eight years. Moreover, Avila's involvement in the kidnaping and murder of Sindulfo Miranda is in keeping with the alleged scheme, as is his conspiring to kidnap another drug dealer. The fact that all of the kidnapings

6

were not carried out by the same defendants or in precisely the same way is inconsequential because they are all logically connected. *See United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003) (varying involvement of defendants does not negate existence of single scheme); *Marcy*, 777 F. Supp. at 1396 (finding the fact that certain defendants were charged with substantially more conspiratorial activity than others is irrelevant for purposes of analyzing joinder). Accordingly, the Court finds joinder is proper under Rule 8(b) as to Avila on the basis of Counts 1 through 3.

### 2. Rodriguez Is Properly Joined under Rule 8(b).

Rodriguez contends he is misjoined under Rule 8(b) because he did not become a member of the conspiracy until March 2001. He argues that the murder, which occurred in 1997, and any other crimes committed around that time, are too remote to meet the "same act or series of transactions" test as to him.[7] (Rodriguez Mot. at 5.) As stated above, the "same series of acts or transactions" test is based on the logical relationship between crimes, not the timing. *Carlisi*, 1993 WL 339079, at *15. Like Avila, Rodriguez is charged with participating in the racketeering and drug conspiracies. He allegedly took part in three kidnapings between March and August 2001. The first victim was confined and beaten until he surrendered 20 pounds of marijuana and arranged to lead defendants to the second victim, who was confined and threatened until he gave

---

[7] The cases cited by Rodriguez do not support his argument that he is improperly joined under Rule 8(b). *United States v. Hubbard*, 61 F.3d 1261, 1272 (7th Cir. 1995) involved a single defendant and was decided under Rule 8(a). In the other case, *United States v. Hardin*, 209 F.3d 652, 665 (7th Cir. 2000), *vacated on other grounds by Sallis v. United States*, 531 U.S. 1135 (2001), the Seventh Circuit affirmed the district court's denial of a motion for severance by two lower-level players in a drug conspiracy.

up 500 pounds of marijuana and about $100,000 in cash. The third kidnaping involved seven victims who were also confined, beaten and severely burned for their suspected roles in stealing drugs and money from defendant J. Carman. These kidnapings are logically connected to the others, including the kidnaping and murder of Miranda, and they fall within the alleged time frame and common scheme of the conspiracy. Accordingly, Rodriguez is properly joined, even though he may have become part of the conspiracy late in the game.

### 3. Joinder is Proper with respect to Counts 25-28.

Avila argues that Counts 25-28 are misjoined because they have "nothing to do with the enterprise's alleged purpose of stealing drugs, selling drugs, and kidnaping drug-dealers [sic] for ransom or drugs." (Avila Supp. Mot. at 2.)[8] Indeed, these charges relate solely to the arrest of one of Avila's codefendants, Charles States. After careful consideration, the Court finds that joinder is proper with respect to Counts 25-28.

In analyzing joinder of counts in a multi-defendant case, the Court looks to Rule 8(b), not 8(a). *United States v. Velasquez*, 772 F.2d 1348, 1352-53 (7th Cir. 1985); *United States v. Schweihs*, 971 F.2d 1302, 1322 (7th Cir. 1991). Joinder is proper if the counts revolve around events which are part of the same series of acts or transactions as the conspiracy itself. *See United States v. Sophie*, 900 F.2d 1064, 1084 (7th Cir. 1990). Where post-conspiracy charges are concerned, joinder is proper unless they are "completely unrelated" to the conspiracy. *Id.*

*United States v. Sophie* involved a drug conspiracy which ended with the arrest of the

---

[8]     The government filed no response to Avila's supplemental motion. In addition, the Court addresses the argument only on behalf of Avila. States failed to raise this argument, therefore it is waived as to him.

8

major players. *Id.* In cooperation with the government, one of the arrestees arranged several

drug deals with three members of the drug conspiracy who had yet to be arrested. *Id.* These three

men later challenged joinder of the post-conspiracy drug deals. In rejecting their argument, the

Seventh Circuit held the post-conspiracy drug deals were properly joined because they involved

members of the conspiracy, "grew out of the conspiracy" and could be seen as a "continuation of

the conspiracy." *Id.* Thus, the charges were not "completely unrelated to the conspiracy." *Id.*[9]

Moreover, joinder resulted in efficiencies due to overlapping evidence and enabled the jury to

make a decision based on the entire picture. *Id.* at 1083.

Likewise, in this case, the charges relating to States' arrest are not completely unrelated to

the alleged RICO and drug conspiracies. States was apprehended pursuant to a warrant which

was issued based on his involvement in the conspiracies. After being a fugitive for five months,

he was located on a tip from an informant. As police tried to enter the apartment they believed

him to be in, there was an exchange of gunfire. Shortly after he was arrested, States claimed he

did not know he was shooting at police. He explained that he had gotten into trouble with some

drug dealers and thought they were breaking into the apartment. The next day, States made

incriminating statements.[10]

---

[9] The case cited by Avila, *United States v. Marzano*, 160 F.3d 399 (7th Cir. 1998), actually supports joinder. There, Charles Marzano and Daniel Marzano were charged with money laundering. Charles was also charged with drug offenses. *Id.* at 400. Daniel was not involved in the drug offenses nor did he launder drug proceeds, but he did launder bank funds embezzled to finance the drug conspiracy. *Id.* at 401. The Seventh Circuit ruled joinder of the drug charges was proper because there was a "chain or circle" that connects the drug dealing at one end with the money laundering at the other. *Id.*

[10] While this information is not in the indictment, it came out during a hearing on States' motion to suppress.

9

The Court cannot say that States' arrest is completely unrelated to the conspiracy.[11] Evidence of the reason for and circumstances surrounding States' arrest as well as statements made during the course of and shortly after his arrest are relevant to and likely admissible in the conspiracy trial. For instance, statements that he got into trouble with some drug dealers tend to support the theory that he participated in the alleged RICO and drug conspiracies. In addition, his possession and use of firearms during the arrest are relevant to the conspiracy charges, which include allegations that defendants carried firearms during various kidnapings. (Sup. Ind. at 53, 55.) Due to the relationship between the conspiracy and the arrest and the resulting evidentiary overlap, joinder of Counts 25-28 is proper. *See Sophie*, 900 F.2d at 1084 (construing Rule 8(b) broadly to allow liberal joinder).

## C. Severance Is Not Warranted under Rule 14.

Having found joinder is proper under Rule 8, the Court now turns to the issue of severance which is governed by Rule 14. Under this rule, a district court may sever a defendant if he demonstrates that he will be prejudiced by a joint trial. *Schweihs*, 971 F.2d at 1320. The determination of prejudice and the remedy of severance is left to the sound discretion of the district court. *Zafiro v. United States*, 506 U.S. 534, 541 (1993).

---

[11] The link between the conspiracy and the arrest-related charges distinguishes this case from two cases where the Seventh Circuit found misjoinder. *See Valasquez*, 971 F.2d at 1352 (finding cocaine trafficking conspiracy among defendants improperly joined with sale of heroin by one defendant where there was no link between heroin sale and cocaine conspiracy); and *United States v. Schweihs*, 971 F.2d 1302, 1322 (7th Cir. 1992) (holding extortion of one individual by Daddino and Schweihs improperly joined with extortion of another individual by Schweihs because there was no evidence to show the extortions were part of the same plan or scheme).

"There is a preference in the federal system for joint trial of defendants who are indicted together." *Id.* at 537. This presumption is particularly strong when defendants are charged with conspiracy. *United States v. Caliendo*, 910 F.2d 429, 437 (7th Cir. 1990). Joint trials are favored because they reduce the expenditure of judicial and prosecutorial time, limit inconvenience to witnesses, avoid delays in bringing defendants to trial, and allow the total story to be presented to a single jury and therefore increases the likelihood of a correct verdict. *Id.* (citing *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987)); *see also United States v. Phillips*, 239 F.3d 829, 838 (7th Cir. 2001) (stating coconspirators should be tried together to economize on judicial and prosecutorial resources and to give the jury a fuller picture of the scheme) (citation omitted).

The danger of a joint trial, of course, is the risk that an individual defendant will be prejudiced. *See Caliendo*, 910 F.2d at 437-38. In this regard, the Supreme Court has stated that severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Thus, in deciding severance motions, district courts must weigh the public interest in judicial efficiency and economy that would result from a joint trial, against the possibility of prejudice to any particular defendant. *United States v. Colon*, No. 97 CR 659, 1999 WL 77226, at *4 (N.D. Ill. Jan. 8, 1999) (citing *United States v. Zanin*, 831 F.2d 740, 744 (7th Cir. 1987)).

A number of circumstances may warrant severance, including: (1) antagonistic defenses conflicting to the point of being irreconcilable and mutually exclusive; (2) massive and complex evidence making it almost impossible for the jury to separate and consider the evidence as it

11

relates to each defendant's innocence or guilt; (3) a co-defendant's statement inculpating the moving defendant; and (4) gross disparity in the weight of the evidence against each defendant. *United States v. Oglesby*, 764 F.2d 1273, 1276 (7th Cir. 1985). Prejudice may also occur if exculpatory evidence becomes inadmissible due to defendants being tried together. *Zafiro*, 506 U.S. at 539. The Court analyzes Carman, Avila, Rodriguez and States' motions for severance within this framework.

### 1. Antagonistic or Irreconcilable Defenses

According to Rodriguez, a joint trial presents a risk of antagonistic defenses because at one point during the conspiracy, he was kidnaped by some of his co-defendants. This argument does not come close to warranting severance. Mutually antagonistic defenses are not prejudicial per se. *Id.* at 538. "Unless the defenses are so inconsistent that the making of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless the acceptance of a defense precludes acquittal of other defendants, it is not necessary to hold separate trials." *Buljabasic*, 808 F.2d at 1263.

The fact that Rodriguez was a victim of one of the kidnapings is not a defense to any of the charges pending against him. As a result, it is difficult to see how this fact can give rise to mutually antagonistic defenses. Rodriguez failed to identify specifically any antagonistic defenses which are likely to arise from this fact, and the Court will not make defendant's argument for him. Therefore, Rodriguez' motion for severance on this basis is denied.

### 2. Massive and Complex Evidence

Avila contends that defendants are entitled to a presumption in favor of severance in light

12

of *United States v. Casamento*, 887 F.2d 1141, 1152 (2d Cir. 1989), because this is a very large and complex case. He points out that the trial will involve ten defendants, twenty-nine counts, approximately fifty separate predicate crimes, and twenty different victims. The Court disagrees with the notion that this case is on par with *Casamento*, which involved twenty-one defendants, 275 witnesses, and took seventeen months to try. *Id.* at 1149. The *Casamento* opinion sets forth guidelines for district court judges who are facing trials of four months or more. *Id.* at 1152. No one has suggested that a trial in this case would take that long. Further, it appears that no more than seven defendants will go to trial. While this case is no doubt challenging in terms of the sheer volume of evidence, it does not appear that the facts and law relating to any of the alleged crimes are particularly complex. Thus, the ordinary presumption applies, namely, that defendants who are indicted together should be tried together. *Zafiro*, 506 U.S. at 539. With appropriate limiting instructions, the Court is confident that the jury will be able to consider the evidence as it relates to each individual defendant and keep track of who allegedly did what to whom. Thus, the Court rejects Avila's assertion that this case is just too massive to be tried jointly without resulting in undue prejudice.

### 3. Inculpatory Statements by Codefendants

Carman and Avila have requested separate trials on the basis that each has made statements incriminating the other regarding the Miranda murder. Carman points to a recorded statement wherein which Avila said: "That was 'P' too, fucked the Dude up man." (Carman Mot. at 17.) Carman claims that this sentence, taken in connection with additional statements made by codefendant Perez, would leave the jury with the impression that 'P' refers to Carman.

He also contends there is no way of redacting the statement to protect him adequately. Accordingly, Carman insists the only remedy is severance.

Under *Bruton v. United States*, a "defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (citing *Bruton v. United States*, 391 U.S. 123, 135-36 (1968)). The Court later narrowed the scope of *Bruton*, holding that such statements are admissible with proper limiting instructions if they can be redacted to eliminate not only the defendant's name, but also any reference to his existence. *Id.* at 211. The Court expressed no opinion as to whether the substitution of neutral pronouns would suffice. *Id.* at 211 n.5. However, the Seventh Circuit "has specifically held that 'the replacement of defendants' names with references such as 'another person,' combined with an instruction to consider the confession against only the declarant, satisfies *Bruton*.'" *United States v. Hubbard*, 22 F.3d 1410, 1421 (7th Cir. 1994) (quoting *United States v. Strickland*, 935 F.2d 822, 826 (7th Cir. 1991)).

The sentence: "That was 'P' too, fucked the Dude up man," on its own, is not facially incriminating. Avila does not mention Carman by name, nor does he specifically refer to the murder. Carman has not provided the Court with the entirety of Avila's statement, so the Court cannot determine whether the statement as a whole incriminates Carman and if so, what remedy might be appropriate. Further, the government has not indicated whether it intends to use the statement at trial, and in fact, the Court does not know for certain that Avila will not take the

14

stand at trial, which would ameliorate any Sixth Amendment concerns.[12] As to Carman's claim

that the statement cannot be adequately redacted to protect him, the Court recognizes that there

are some situations where "no sterilizing redaction or limiting instruction could sensibly have

removed the inculpatory nature of the [codefendant's] statement," *United States v. Bigelow*, 914

F.2d 966, 972 (7th Cir. 1990), but without more, the Court is unable to determine whether this is

one of those situations.

Finally, the Court notes that severance is not an automatic remedy when inculpatory

statements are at issue. *See Richardson*, 481 U.S. at 209 (trying "defendants separately whenever

an incriminating statement of one of them is sought to be used....is not as facile or as just a

remedy as [it] might seem."). A better remedy could be redacting or excluding the statement

altogether. Thus, the Court declines to apply the extreme remedy of severance based only on the

fact that the government may seek to introduce the above quote at trial.

Similarly, Avila moves for severance from Carman based on allegedly inculpating

statements contained in Carman's proffer as well as statements made by other codefendants.

Avila fails to identify specifically or provide the Court with the substance of any of these

statements. The Court is therefore at a loss to determine the threshold issue of whether any such

---

[12] Carman argues that severance is required because Avila's statement, when considered with an allegedly incriminating statement made by Perez, will leave the jury with the unmistakable impression that 'P' refers to him. This is equally unavailing for two reasons. First, Perez is expected to plead guilty and testify at trial, thus Carman will have the opportunity to cross examine him. Second, the Supreme Court has rejected "contextual implication" arguments, which ask the court to look beyond the confession to other evidence presented at trial to determine if the codefendant was incriminated. *Hubbard*, 22 F.3d at 1421 (citing *Richardson*, 481 U.S. at 209).

statements incriminate Avila. His motion for severance on this basis is therefore denied.

Finally, defendant Alberto Rodriguez claims a joint trial creates the possibility that an admission by one defendant will inculpate another. He too fails to identify any specific statements for the Court to consider. Severance is not warranted because there is a mere possibility that one defendant's statement could inculpate another. Accordingly, Rodriquez' request for severance on this basis is also denied.

### 4. Gross Disparity of Evidence

States, Rodriguez, and Avila all move for separate trials, claiming they would be unfairly prejudiced in a mass trial due to admission of evidence of the murder and other acts of violence in which they did not participate. In particular, they argue that the murder evidence is so gruesome and inflammatory that once the jury hears it, they will inevitably punish States and Rodriguez for the acts of their coconspirators. They claim that severance is an appropriate remedy because evidence of the murder would not be admissible if they were tried separately.

A disparity in evidence among defendants does not establish actual prejudice and therefore is not a basis for severance in and of itself. *United States v. Caliendo*, 910 F.2d 429, 438 (7th Cir. 1990). This holds true even if some defendants are charged with more violent or heinous crimes than others. *United States v. Phillips*, 239 F.3d 829, 938 (7th Cir. 2001) (stating defendant was not entitled to severance even though he was the only one not charged with a violent crime); *United States v. Crockett*, 979 F.2d 1204, 1217 (7th Cir. 1992) (refusing to sever defendant on account of "massive, overwhelming evidence of the violence on the part of [the leader of the enterprise]"); *Caliendo*, 910 F.2d at 438 (rejecting contention that acts and threats of

16

violence by codefendants prejudiced jury against defendant). In this situation, limiting instructions requiring separate consideration of the evidence as it pertains to each defendant are sufficient to prevent prejudicial spillover. *See Caliendo*, 910 F.2d at 438 (stating juries are presumed capable of adhering to such instructions).

Both States and Rodriguez are charged with participating in violent kidnapings during the course of the conspiracy. The fact that they did not participate in the one that ended in murder does not entitle them to severance. The Court is satisfied that any potential prejudice based on the disparity in evidence among defendants can be cured by limiting instructions.[13] Moreover, since both States and Rodriguez are charged as co-conspirators of the murder defendants, evidence of the murder would be admissible even if they were tried separately. *See United States v. Adeniji*, 221 F.3d 1020, 1028 (7th Cir. 2000) (evidence of one participant's actions in mail fraud scheme is admissible against other participants in that scheme).

States claims the risk of prejudice is particularly heightened where he is concerned because he neither was a "regular participant" in the conspiracy, nor is he alleged to have been personally involved in an act of violence. The Court disagrees with these self-serving characterizations. First, States' claim that Carman, J. Carman, Perez, Calderon, Casiano and Avila were "more or less regular participants" in the conspiracy, belies his claim that he was not. (States Mot. at 4.) A review of the indictment shows that States is charged with participating in

---

[13] Defendants question the effectiveness of limiting instructions, but they have cited no case law warranting severance in this particular case. Differing levels of culpability and proof are inevitable in any multi-defendant trial and, were the Court to grant severance on this basis, severance would be warranted in nearly every multi-defendant, multi-year conspiracy trial.

four kidnapings in two months. His involvement is roughly on par with that of his codefendants Calderon, who is charged with two kidnapings and two drug transactions in three years; Casiano, who is charged with three kidnapings in five months; and Avila, who is charged with one kidnaping and one kidnaping conspiracy in ten months. By his own terms then, the Court finds States was more or less a regular participant in the conspiracy. Second, the fact that States may not have personally tortured or beaten any of the kidnaping victims engenders no sympathy. He allegedly was an active participant in four violent kidnapings and carried a firearm during at least one of them. The Court is unwilling to grant severance on the basis that his codefendants carried out the beatings while he stood guard. Justice will be best and most efficiently served by allowing a jury to hear evidence regarding the entire scheme and States' participation in it. The Court trusts the jury will be able to sort through the evidence and adhere to limiting instructions.

Avila similarly argues for severance, claiming his involvement in the RICO conspiracy was relatively limited. He is charged with participating in the particularly gruesome kidnaping and murder of Miranda, whom defendants suspected to be a drug dealer, yet Avila contends he should not be forced to go to trial with his codefendants who were responsible for more than a dozen *other* violent crimes in which he had no part.[14] His concern, of course, is that the jury will hold him responsible for more than his fair share of the violence. It goes without saying that the above analysis dictates the same result with respect to Avila's arguments. Thus, his motion to sever based on the disparity of evidence is also denied.

---

[14] To the extent Avila's arguments are based on the death penalty, they have been disregarded as moot.

18

In addition, Avila argues that severance is warranted due to the prejudice that "naturally will flow from States' attempts to murder law enforcement agents, which are not linked to him and for which he has no accountability." (Avila Supp. Mot. at 4.) The Court is convinced that the jury can easily compartmentalize the evidence relating to States' arrest. There is little possibility for confusing the jury when no one has suggested Avila had any involvement in the incident. *See Sophie*, 900 F.2d at 1085) (rejecting severance argument where evidence of post-conspiracy counts was well-defined and easily segregated from the rest of the evidence). Further, it seems that States' firing through a door at police officers whom he thought were drug dealers and striking one of them in the hand pales in comparison to the gruesome murder charges against Avila and the multitude of other violent acts alleged to have taken place during the course of the conspiracy. Thus, the Court finds that the potential for prejudicial spillover from evidence of States' arrest is slim at best.

Finally, in considering all of defendants' arguments for severance, the Court finds that a joint trial in this case serves the important purposes of promoting efficient use of judicial and prosecutorial resources and presenting the jury with a complete picture of the evidence so that they can make an accurate determination. While defendants do not state as much, granting their motions for severance would result in the same conspiracy evidence being presented in anywhere from three to seven trials. The arguments raised by defendants do not come close to establishing the kind of prejudice which would justify an undertaking of that magnitude.

### D. Dismissal Is Not Warranted on Duplicity Grounds.

Carman and Avila move to dismiss the RICO and RICO conspiracy counts as duplicitous.

Duplicity is the joining of two separate offenses into a single count. *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir. 1996). Fed. R. Crim. P. 8(a) prohibits duplicity by requiring "a separate count for each offense." *United States v. Berardi*, 675 F.2d 894, 898 n.5 (7th Cir. 1982). The primary vice of a duplicitous count is that it may allow for an invalid non-unanimous jury verdict on each separate offense. *United States v. Buchmeier*, 255 F.3d 415, 425 (7th Cir. 2001). Additionally, duplicity can result in "improper notice of the charges against [the defendant], prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, [and] in exposure to double jeopardy." *Marshall*, 75 F.3d at 1111. The threat of a non-unanimous verdict can be cured with specific jury instructions requiring individual consideration of each offense within the count. *Marshall*, 75 F.3d at 1112.

Defendants's argument that the RICO count is fatally flawed because each racketeering act includes multiple offenses was rejected in *United States v. Marshall*, 75 F.3d 1097 (7th Cir. 1996). In *Marshall*, the defendant moved to dismiss the RICO count as duplicitous because three of the predicate acts included allegations of both bribery and extortion. *Id.* at 1110-11. The district court denied the motion to dismiss and instructed the jury that, in coming to a verdict, it must unanimously agree as to which offense the defendant committed. *Id.* at 1110, 1112. The Seventh Circuit recognized that the predicate acts combined two separate and distinct offenses, but found that the indictment was not "fatally flawed" because the jury was correctly instructed that it had to unanimously agree on which offense the defendant committed. *Id.* at 1112.

Likewise, proper jury instructions will ensure a unanimous verdict in this case. The RICO count lists seventeen acts of racketeering, each of which revolves around a single incident

20

and specifies when the incident occurred and which defendants were involved. Many of the racketeering acts are broken down into separate, yet interrelated, crimes. For instance, racketeering act three names Carman, Perez, Avila and Ortiz in connection with the July 1997 kidnaping and murder of Sindulfo Miranda. The following four crimes are included: state kidnaping, state extortion, attempted possession of narcotics with intent to distribute, and state murder. The Court agrees with the government that the indictment is straightforward, albeit lengthy. Further, any danger of a non-unanimous verdict can be cured by instructing the jury that they must "unanimously agree upon which of the different offenses alleged within a racketeering act the defendant committed." Seventh Circuit Pattern Jury Instructions (Criminal) at 323 (1999). Moreover, given the specificity of the indictment and the ability of the Court to instruct the jury, none of the other adverse effects that may result from duplicitous counts are likely to present themselves here. Defendants' motions to dismiss Counts 1 and 2 are therefore denied.

**Conclusion**

For all of the reasons stated above, defendants Richard Carman, Omar Avila, Alberto Rodriguez and Charles States' motions for severance [112, 136, 178, 248] are denied. Carman and Avila's motions to dismiss on duplicity grounds [179, 251] are also denied.

**SO ORDERED.**                    ENTERED:  7/14/04

HON. RONALD A. GUZMAN
United States Judge

21